Good morning. Adam Karp for the Plaintiff Appellant, Nicholas Criscuolo. I'd like to reserve two minutes for rebuttal please. Certainly. Thank you. We're here today, Your Honor, asking for a reversal and a remand on two grounds. First, that there were several issues of material fact that required denial of summary judgment motion as to the merits of the Fourth Amendment claim but also as to qualified immunity. And furthermore, that the District Court applied the wrong legal standards for evaluating not only qualified immunity but the merits of the Fourth Amendment claim. How long did this encounter take? The estimates vary, Your Honor. If you're talking about from the time that Slider started up the hill to the moment where he was killed, probably less than a minute and other estimates would be 15 to 20 seconds. So even viewing the facts in the light that's most favorable to the Plaintiff, at most this was about under a minute. That's true, Your Honor. Total from start to finish? That would be an accurate assessment, yes. From the time the dogs were separated until the dog was shot? Oh, that would be probably 10 seconds, 10 to 15 seconds tops. Okay. That factor, however, is over outweighed by other factors. Other factors that have been part of the firmament of Ninth Circuit law as well as other circuits that it draws from. And I'm speaking particularly of the Brown case out of the Third Circuit, which was, to some degree, extended by the San Jose Court here in 2005. The issue of the owner being known, being available, and present, and attempting to assert control over the animal, not necessarily succeeding but desirous of reasserting control, is a key factor that resulted in the Third Circuit trial. And I think if you consider that, although there was a short time frame between the separation of the dogs and the killing of Slider, the facts in the light most favorable to Mr. Chris Cawolo, and as corroborated by several other witnesses, independent civilian witnesses, would show that he was within one to two feet of his dog with leash in hand, ready to leash him up, and that his dog was immobile, was not facing or showing any type of aggression toward Maddox or to Deputy Layman's. And under those terms, I think a jury would be able to reasonably conclude that the use of force here was excessive. When Slider went after Maddox, my understanding of the record is that his owner was trying to stop him with verbal commands, and that didn't stop him, correct? True. He had two dogs. He had Diamond and Slider. He succeeded in leashing up leads down to a decline to the lake and the embankment where he was letting his dogs run. And up the hill was the location of Mr. Kier, who was in custody, and Deputy Layman's was allowing his dog out to urinate before he would conduct the search. Mr. Chris Cawolo was attempting his way up the hill in order to recover his dog and was not very far, by all accounts, I think 20 or 30 feet at that moment. I think what's important to consider is the chronology. If the shooting occurred while Slider was in the midst of an attack, that was reasonably perceived as one that would cause injury. But there had been an attack prior to the shooting. Well, I think that's in dispute. That's an issue of material fact. Was there really an attack going on? How would you characterize it? I'd characterize it as what many dogs do at off-leash parks when they're trying to introduce themselves to one another and there's the establishing of an alpha or a pecking order. Particularly when a dog, if the person who is accompanying one of the dogs is overreacting, that may be transmitted to the animal and the animal may misread those signals and overreact. And I'm basing this on Jim Crosby, whose declaration is extensive, his experience is extensive as well. And he indicates that there were several features of this encounter that resulted in the excessive use of force, such as Deputy Layman's could have used O.C. spray. Every letter carrier in this country carries a non-police grade oleocapsicum spray that's used on dogs all the time. Deputy Layman's indicated in deposition that he had used it once and he was able to carry on without needing to shoot and kill the dog. He didn't use that here. He also was trained on and had on his belt a taser. He could have drive-stunned, but he didn't do that as well. And I think what's critical is that he is a certified canine handler and trained by the Washington State Patrol to do everything but shoot a dog. And in light of that, he... Let's assume that the force was excessive because of these lesser measures that were available to the officer, the deputy at the time. Given the fact that it was a split-second decision, at best under a minute, and the fact that at the time that he kicked Slider away, he didn't know where Maddox was because he lost control. Maddox was off-leash and he couldn't see where Maddox was. And even though the owner was there, the owner hadn't been able to control the dog in the past. Why isn't he entitled to qualified immunity given those circumstances? There's the other factor, which is the imminence of a perceived threat or there was never any indication that he would redirect any type of aggression to a human being. That distinction has to be made. Right. The concern is that he might re-engage Maddox at some point. He might. And that's getting into... I think if one considers the objective facts... Is that where the nub is on the facts in this case? I think that is right. Whether at that moment Slider truly presented a threat or was about to be leashed by his owner. That's a factor as well as that the objective facts that were developing over the course of that prior 30 to 40 seconds would have indicated that this was normal dog interaction. And a certified canine handler who is purportedly trained in how to perceive and break up dog fights would not have overreacted by drawing a gun and firing three times. As to the qualified immunity point, Your Honor, I think that's getting at Deputy Layman's contention that this was a mistake of fact. That he misperceived the interaction of the dogs or maybe what Slider was going to do if he were not leashed up at Mr. Criscuolo. But for a mistake of fact to apply, the court or really a jury would have to determine whether that mistake was reasonable. And the Torres case decided about two years ago, referred back to the earlier 2008 decision and outlined five factors to assess whether the mistake is reasonable. And I'm not going to have enough time to work through those now, but I will just summarize it by noting that he did have training sufficient to avoid that mistake. He did not act in accordance with that training by his own several admissions and deposition. If he followed it, he would have been alerted to that. And there was really nothing that Slider had done that would have created undue haste or forced him to act inconsistently with that training. Therefore, any mistake that he may have made in that perception would not have been reasonable and qualified immunity should not be granted. There's also the issue of qualified immunity on the defendant's behalf. The defendants appear to require some type of granular specificity that there has to be an exact case on point, but that isn't the law of the circuit. That would have basically, as the Supreme Court said, wrench out of all meaning the warning of being on notice even in novel circumstances. This isn't novel. The law is clear that there are imminence factors, the owner-present factor, the less intrusiveness factor, and even Graham v. Connor talks about whether there's an immediate threat and whether there's evasion by flight. A jury should be entitled to determine whether the officer acted reasonably. I haven't even, I'm out of time here, but I would like to reserve to speak to the issue of the policy. All right, thank you. Thank you. May I please report, counsel? My name is Jerry Moberg. I'm an attorney practicing in a freight in Washington, and it is my privilege to represent Grant County and Corporal Layman's in this case. It's a difficult case from this sense. I don't think anybody, including Corporal Layman's, that cherishes the thought of having to shoot and kill a dog. He himself is a dog raiser, and so the issue then becomes, in a very dynamic situation with police officer on the field, we as lawyers and judges then get to review for hours and hours and hours what could have been done, what might have been done, what the alternatives were, but our courts have said very wisely, don't do that. Look at this dynamic situation from the standpoint of the development in the officer's eyes at the time, and Judge Succo sifted through a lot of the irrelevant facts, and I think these facts are what Judge Succo identified as relevant in this case. This dog was Maddox was 60 pounds. Slider was either charging or jogging towards Maddox at the time, and the commands of his owner did not change that. He did not return when his owner commanded him to return. The dogs were engaged in a fight. Mr. Crustillo himself says that, admits that in his declarations and his statements made shortly after the event. I thought at the point the dogs were separated that Slider was either retreating or at least not advancing on Maddox. Is that right? Not according to to the closest eyewitness, and that's Corporal Layman's. What happened was... Do we have to accept his version? Well, I think from... you don't have to accept his version, except I don't think there's any other eyewitness who who was in the same vantage point. What the testimony I think fairly is, with the emphasis in favor of the dog's owner, is that the dog was engaged in a fight. Corporal Layman had kicked the dog away at least once. There was a re-engagement. He kicked the dog away a second time. The dog then is turned and looked, and Corporal Layman's believed the dog was likely to re-engage a third time and to harm Maddox. But in accepting that, did the District Court draw the inferences in the defendant's favor? Because there are three witnesses who are in favor of the plaintiff. You've got Mr. Moore, thought that Slider was retreating. You've got Renato Pichardo, indicating that after the kick, Slider was 8 to 10 feet down the hill. You've got Mr. Criscolo, indicating that he was 1 or 2 feet away, reaching the collar of the dog. So viewing the facts in the light most favorable to the plaintiff, which we must do on summary judgment, did he shoot a retreating dog? Well, I think not for this reason. The eyewitnesses can talk about location. What they were not, and what the court did not find any inference from, was that the eyewitness's opinion about what the dog was or wasn't going to do. That's really not a factual issue. And so if you assume that he was 10 feet away, and the eyewitnesses say that the dog had turned and looked towards the officer, where I think it's undisputed is that at that point the officer reached the collar of the dog. And so from that inference, I think the court considered that the officer's view reasonable. I think it was. This is not a use of force case that in the traditional sense where a human being is involved. There's no standard or requirement that he consider an alternative use of force at that point if the officer decided that the most appropriate reaction on his part would be to shoot the dog. He had testified now later that he had tried mace, and frankly I don't think tasering is even a realistic option, but other uses of force, and they just weren't very effective. And this officer in that split second had to make the decision of whether or not his dog was in danger, Maddox, and protect him, and made the choice that I think a reasonable choice. So under the Fourth Amendment violation, the trial court found, and I think appropriately so, that this was a reasonable action. Now, even if you say, all right, because of some alternative means, this may not have been objectively reasonable, I disagree. Again, we evaluate what this officer does in the field, and this is an intentional tort. This is a civil rights claim, so it's not that it can be accidental or negligent. There has to be some purposeful violation of the civil right here. But even if you find that the Fourth Amendment violation does not result in an objective reasonable standard, I still believe qualified immunity applies, and the court so found in this case. Because qualified immunity says that except for the most incompetent of police officers who knowingly violate someone's right, we're going to protect the officer in the field. We're going to give that officer wide discretion to make the decisions that he or she has to make in these split second and sometimes life and death decisions. In this instance, did the officer believe that the threat was to him or to Maddox? At this point, the officer believed that the threat was to his dog, Maddox, who was a police, actually not a police officer, but a part of the police department. He had a right to protect Maddox at that point as he would have the right to protect anyone else on the scene. The officer did not say that he was concerned about his own personal welfare. He was concerned that this dog was going to reengage and harm and possibly kill Maddox. Even if he's mistaken on that, he's protected by qualified immunity. The analysis is clear. I know you've viewed it a number of times. And this right has to have been clearly established. And this qualified immunity applies regardless of the determination of the Fourth Amendment reasonableness inquiry. One thing I think that has happened since this case has been filed is traditionally we would always say that the law has to be so clearly established that a reasonable officer would know that his conduct was unlawful. But I think since Ashcroft v. Elkid, which is 131 Supreme Court 2024, even that standard has been modified where the court said now that it has to be established that every reasonable officer would have found this conduct to be unlawful. I think that's a shift with the United States Supreme Court saying we want to further extend to these officers the right to make decisions in the field and not be second-guessed by plaintiffs or by lawyers or by the court after the fact. And so if we're looking at the facts in this case and say, would every reasonable officer know that the actions that Corporal Lehman took were unconstitutional, were a violation of law, were going to violate somebody's civil rights, then qualified immunity doesn't apply. But that's not this case. This officer acted in what he believed to be an appropriate and a reasonable manner. And while it unfortunately resulted in the death of this dog, this dog had engaged the officer's dog and was, in fact, interfering and attacking and showing aggressive behavior towards Maddox. Without suggesting for a moment that you shouldn't control your own time, you've now repeated that argument about three times. I think we understand it. Thank you. Did the deputy have his gun drawn at the time that the dogs were still engaged, or was that a different deputy? There was a deputy standing beside him who had drawn his gun and was also going to shoot Maddox but could not get a clear shot. And so it was ‑‑ Shoot Slider. Slider, I'm sorry, and could not get a clear shot. So there were at least two deputies who, and I think that's important from the standpoint of reasonableness, there were at least two deputies who were viewing that situation with the concern that ‑‑ with a reasonable concern. As far as the final claim, which is the Monell claim, if there is no violation by the officer, there is no Monell claim, the policy, there is no indication that the policy of if an officer encounters an aggressive dog, it has the right to shoot that dog, is an unconstitutional policy. There is no policy that existed that would have resulted in a violation of civil rights. And finally, as far as training, there's simply no evidence in this record that there was a notice to Grand County that they needed training or that the deliberate indifference standard would be met for the lack of training. I believe that Judge Zucco made the appropriate decision and you should affirm the trial court. Thank you for your time. Thank you, counsel. Okay, thank you. I think what's important to consider here is that it is not an intentional, culpable mental state for a Fourth Amendment violation. This was one of the errors that I believe was committed below. The Daniels Court certainly discussed that the mere negligence bar applies to procedural due process claims, but later decisions in the Ninth Circuit, Verunda and Caballero, for instance, said that that was not the case, that in fact a negligence standard very well could apply to a Fourth Amendment. So each amendment must be analyzed separately for a culpable mental state. And here, as to the law being clearly established, it's been the law of this circuit for over 20 years per the Fuller v. Vines case that officers, every officer should know not to shoot a dog who is posing no imminent threat. And then that was later refined by San Jose to discuss the owner-present standard that arose out of the Brown case, as well as articulating a less intrusive alternative, which there were several here. Briefly, Officer Dobson did pull his weapon. However, he had testified that he used O.C. spray with success several times before, and Officer Bernard, who was also there, didn't see the need to do anything. He didn't perceive any dramatic threat that would require him to deploy any force. But this really comes down to the core facts, which is at the moment of being shot, no testimony of growling, pouncing, baring teeth, running, getting ready to attack, which are the facts we see in the cases drawn upon by defense. Perez, Burks, several of those other district court decisions all rely on those facts. We don't have those here, and a jury is entitled to reconsider that. The other point is that the policy, they articulated that it needs to be, if it's facially valid, there can be no Monell violation. The Jackson case out of this Court in 92 said quite the opposite. And in 10 seconds, I'm not going to get very far, but what I would like to have the Court take a look at is the notion that there was admittedly no training whatsoever, and, in fact, it countermanded the training given by the State. All right. Thank you very much, Counsel. The matter will be submitted for decision.
judges: Selna, Hawkins, Nguyen